IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CLYDE TURNER )
)
v. ) NO. 3:12-0847
)
DARON HALL, et al. )

TO: Honorable Todd J. Campbell, District Judge

**R E P O R T   A N D   R E C O M E N D A T I O N**

By Order entered August 21, 2012 (Docket Entry No. 3), this action was referred to the Magistrate Judge to enter a scheduling order for management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending are separate motions to dismiss filed by Defendants Danny Blaylock (Docket Entry No. 23), Daron Hall (Docket Entry No. 25), Correctional Officers Sloan, Howell, Darby, and Dotson (Docket Entry No. 27), and the unnamed defendants identified in the complaint as "C.J.C.['s] nurse practitioners" and "C.J.C.['s] Doctor M.D." (Docket Entry No. 34), and a motion for summary judgment filed by Defendant Correct Care Solutions, LLC (Docket Entry No. 43). Also before the Court is Plaintiff's Response in Opposition to the motions, see Docket Entry Nos. 52 and 59, and replies filed by the unnamed defendants and by Defendant Correct Care Solutions, LLC. See Docket Entry Nos. 55 and 60. For the reasons set out below, the Court recommends that the motions be granted and this action be dismissed.

## I. BACKGROUND

Plaintiff, who is currently confined at the Wilson County Jail, filed this action pro se and in forma pauperis on August 16, 2012, based on events that occurred while he was confined as a pretrial detainee at the Criminal Justice Center ("CJC"), a facility operated by the Davidson County, Tennessee Sheriff's Office ("DCSO"). The defendants are Davidson County Sheriff Daron Hall, DCSO employee Danny Blaylock, correctional officers f/n/u Howell, Sloan, Darby, and Dotson, Correct Care Solutions, LLC ("Correct Care"),[1] and unnamed defendants identified as "C.J.C.['s] nurse practitioners" and "C.J.C.['s] Doctor M.D." See Complaint (Docket Entry No.1), at 3.

Plaintiff alleges that his constitutional rights were violated and seeks damages under 42 U.S.C. § 1983. He asserts that, during the summer of 2012,[2] he was housed in a gym which was overcrowded and was "something out of the dark ages." Id. at 5. He makes numerous complaints about the general living conditions:

    1. The gym was infested with rats, spiders, and roaches;

    2. There were only 9 toilets and 3 showers that worked;

    3. The overhead pipes were coated with dirt and the ventilation system had not been cleaned in "over a decade;"

    4. The staff turned the air conditioning off as a disciplinary measure;

    5. The medical staff were unqualified, failed to properly dispense medications, incorrectly evaluated medical issues, and did not give priority to inmates who had life threatening diseases and illnesses;

    6. Medical orders were often not followed or were altered by staff who worked on different shifts;

    7. Money that was withdrawn from inmate accounts was not returned to the inmate upon resolution of the inmate's criminal charges;

---

[1] In its Answer (Docket Entry No. 33), Correct Care states that it was incorrectly identified in the Complaint as the "Medical Department (C.C.S.)."

[2] Although the Complaint does not contain the dates when Plaintiff was at the CJC, Plaintiff states in his response to the motions to dismiss that he was at the CJC from July 4 - September 25, 2012. See Docket Entry No. 52, at 11.

2

8. Pursuant to the DCSO policy, a fee was charged when a family member deposited money in an inmate's account;

9. The food served was "pure filth," contained hair and rat droppings, made inmates sick, and was not served in a supervised manner;

10. Staff and other employees did not wear name tags;

See Complaint, at 5-8. Additionally, Plaintiff alleges that:

11. He found a rock in his food on July 25, 2012, which cut his gums; and

12. He was not properly treated for medical conditions and the medication he was given by the medical staff made him violently ill.

Id. Finally, Plaintiff contends that Danny Blaylock, the CJC grievance coordinator, improperly restricted the scope of inmate grievances by refusing to accept grievances which were not limited to one individual incident or complaint or that contained complaints about individuals and/or situations at multiple locations and that Blaylock applies rules that were not part of the grievance policies set out in the inmate handbook or listed on the grievance forms. Id. at 9-10.[3]

Defendant Correct Care filed an answer (Docket Entry No. 33), and seeks summary judgment in its favor. Defendant Correct Care argues that it cannot be held liable under Section 1983 based on a theory of respondeat superior and that Plaintiff has not set forth any facts that would support a claim that Correct Care was directly responsible for any violation of his constitutional rights regarding the provision of health care at the CJC. See Docket Entry No. 45.

In lieu of answers, the remaining Defendants have filed motions to dismiss the action. Defendant Blaylock argues that: 1) Plaintiff's allegations regarding prison grievances, even if true, fail to implicate a constitutional right and, thus, Plaintiff fails to state a constitutional claim against him under 42 U.S.C. § 1983; and 2) he is entitled to qualified immunity from any damage claims. See Docket Entry No. 24. Defendant Hall argues that: 1) Plaintiff fails to allege facts showing

---

[3] By Orders entered January 31, 2013 (Docket Entry No. 61), and February 22, 2013 (Docket Entry No. 69), the Court granted Plaintiff's request to file an amended complaint to the extent that he sought to clarify the factual allegations of his Complaint. However, Plaintiff has failed to file an amendment.

3

Hall's personal involvement in the alleged constitutional conduct and, thus, fails to state a constitutional claim against him under 42 U.S.C. § 1983; and 2) he is entitled to qualified immunity from any damage claims. See Docket Entry No. 26. Defendants Sloan, Howell, Darby, and Dotson argue that: 1) Plaintiff fails to allege sufficient facts showing their personal involvement in the alleged constitutional conduct and, thus, fails to state a constitutional claim against them under 42 U.S.C. § 1983; and 2) they are entitled to qualified immunity from any damage claims. See Docket Entry No. 28. The unnamed defendants identified as "C.J.C.['s] nurse practitioners" and "C.J.C.['s] Doctor M.D." make a special/limited appearance and argue that Plaintiff's attempt to serve them collectively as a group does not constitute service of process upon any individual and that the action should be dismissed as against them under Rule 12(b)(4) of the Federal Rules of Civil Procedure. See Docket Entry No. 34.

## II. STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint, resolve all doubts in the plaintiff's favor, and construe the complaint liberally in favor of the pro se plaintiff. See Kottmyer v. Maas, 436 F.3d 684 (6th Cir. 2006); Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). However, although the complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for his entitlement to relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The factual allegations supplied must be enough to show a plausible right to relief. Twombly, 550 U.S. at 555-61. More than bare assertions of legal conclusions are required to

4

withstand a motion to dismiss and the complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id.; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436-37 (6th Cir. 1988). The Court need not accept as true legal conclusions or unwarranted factual inferences. See Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000); abrogated in part on other grounds, Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Although Rule 8 of the Federal Rules of Civil Procedure does not constitute a "hyper-technical, code-pleading regime," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79. A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

### III. CONCLUSIONS

A. Defendant Blaylock

Defendant Blaylock's motion to dismiss should be granted. Regardless of the language Plaintiff uses to describe his claim against Defendant Blaylock, Plaintiff makes no factual allegations that Blaylock was personally involved in any aspect of Plaintiff's confinement other than handling

6

inmate grievances.[4] Plaintiff's claim against Blaylock is based entirely upon Plaintiff's dissatisfaction with the manner in which Blaylock processed internal grievances from inmates at the CJC. However, complaints about the quality or manner of prison grievance procedures do not support a constitutional claim under Section 1983 because there is no constitutional right to an effective, fair, or properly functioning prison grievance procedure and because a prison inmate does not have a protected interest in prison grievance procedures. See Walker v. Michigan Dep't of Corr., 128 Fed. Appx. 441 (6th Cir. Apr. 1, 2005); Miller v. Haines, 156 F.3d 1231, 1998 WL 476247 (6th Cir. Aug. 3, 1998) (Table Decision); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). Further, allegations that a prison official failed to follow an internal prison policy are not sufficient to support a constitutional claim. See Black v. Parke, 4 F.3d 442, 448 (6th Cir. 1993); Barber v. City of Salem, Ohio, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff has not alleged facts that support a plausible claim that Blaylock violated Plaintiff's constitutional rights in any manner and has not set forth in his Response in Opposition any persuasive legal argument for why Blaylock should not be dismissed.

B. Defendant Hall

Defendant Hall correctly points out that the Complaint contains no allegations that he was personally involved in any of the events alleged in the Complaint. Plaintiff acknowledges in his Response in Opposition that Hall had no personal involvement in the events at issue. See Docket Entry No. 52, at 6. Plaintiff argues, however, that Defendant Hall should nonetheless be held liable because he is the ultimate supervisor of the CJC, he instructed the other defendants who worked at the CJC, and he failed to adequately view, inspect, and maintain the CJCJ. Id.

---

[4] Although the Defendants have not raised as an affirmative defense the issue of Plaintiff's compliance with the administrative exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), the Court notes that Plaintiff only states that he filed a grievance about finding a rock in his food and does not indicate that he filed grievances about any of his other claims. See Docket Entry No. 1, at 2.

Plaintiff's argument lacks merit, and Defendant Hall's motion to dismiss should be granted. It is well-settled that a defendant cannot be held liable under 42 U.S.C. § 1983 absent a showing that the defendant was personally involved in some manner in the unconstitutional conduct. Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992). Defendant Hall's supervisory position and his authority to control employees cannot form the basis for a claim of individual liability against him because the theory of respondeat superior does not support a claim under Section 1983. Monell v. Department of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 371-72, 375-77, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Phillips v. Roane Cnty., Tenn., 534 F.3d 531, 543 (6th Cir. 2008); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), cert. denied, 530 U.S. 1264, 120 S.Ct. 2724, 147 L.Ed.2d 988 (2000); Hays v. Jefferson Cnty., 668 F.2d 869, 872 (6th Cir. 1982). To survive the motion to dismiss, Plaintiff must show that his Complaint sets forth factual allegations that Defendant Hall personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002); Shehee, supra; Leach v. Shelby Co. Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989). Plaintiff has made no such allegations in the Complaint. To the extent that Plaintiff alleges that Defendant Hall failed to adequately view, inspect, and maintain the CJC, such allegations are speculative and unsupported by any actual factual allegations. Such allegations are simply insufficient to support a claim of individual liability against Hall under Section 1983. See Chapman v. City of Detroit, 808 F. 2d 459, 465 (6th Cir. 1986); Smith v. Rose, 760 F.2d 102, 106 (6th Cir. 1985).

C. Defendants Sloan, Howell, Darby, and Dotson

In his Response in Opposition, Plaintiff acknowledges that Defendant Dotson had no personal involvement in the events at issue. See Docket Entry No. 52, at 6. Accordingly, Dotson should be dismissed from this action for the same reasons that support dismissal of Defendant Hall as set out supra.

8

With respect to Defendants Sloan, Howell, and Darby, the Complaint contains no specific factual allegations against these three defendants. In his response in opposition to their motion to dismiss, Plaintiff argues that these defendants controlled the air and ventilation system at the CJC, which he alleges was turned off as a disciplinary measure. Even if the Court accepts that Plaintiff's response is sufficient to implicate them in the ventilation/air conditioning claim alleged in his Complaint, his claim simply fails to rise to a plausible constitutional claim. Initially, the claim is not supported by factual allegations that provide any factual specificity to the claim, such as what dates the air conditioning/ventilation was turned off, how long it was left off, the frequency with which the air conditioning/ventilation was turned off, or how Plaintiff knows these particular defendants were involved. Additionally, given the generally vague nature of Plaintiff's allegations and the apparently short period of time Plaintiff was confined at the CJC, his allegations simply fail to show that Plaintiff was subjected to the type of extreme conditions of confinement necessary for a constitutional claim. To satisfy the objective prong of any Eighth Amendment[5] conditions of confinement claim, "extreme deprivations are required," Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), and only grave deprivations of the civilized measure of life's necessities constitute cruel and unusual punishment. Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); Hadix v. Johnson, 367 F.3d 513, 525 (6th Cir. 2004). At best, the plaintiff has complained about harsh or uncomfortable living conditions, which are not sufficient to support a constitutional claim. Rhodes, 452 U.S. 349; Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987).

Plaintiff also states in his response that "these defendants deliberly (sic) cause violance (sic) amongs (sic) inmates for amusements (sic)." See Docket Entry No. 52, at 5. This claim was not

---

[5] The Eighth Amendment's prohibition against cruel and unusual punishment applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 & n.16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985). As such, claims brought by pretrial detainees challenging conditions of confinement are analyzed using Eighth Amendment standards. See Spencer v. Bouchard, 449 F.3d 721, 777 (6th Cir. 2006); Thompson v. County of Medina, 29 F.3d 238, 242 (6th Cir. 1994).

contained in the Complaint, and Plaintiff cannot amend his Complaint to assert a previously unpled claim via a response to a motion to dismiss. Additionally, this allegation is likewise factually unspecific and fails to show that Plaintiff was himself a victim in any type of inmate violence at the CJC.

The Complaint simply fails to set forth factual allegations which are sufficient to state constitutional claims of personal liability against Defendants Sloan, Howell, Darby, and Dotson upon which relief can be granted.

D. Qualified Immunity Defense

Because the Court finds that there are no factual allegations in the Complaint which support a plausible constitutional claim against Defendants Blaylock, Hall, Dotson, Sloan, Howell, and Darby, it is unnecessary to address these defendants' alternative defense of qualified immunity. However, Plaintiff's failure to set forth facts supporting a plausible claim that a constitutional violation has occurred would require dismissal of the claim based on qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Sigley v. City of Parma Heights, 437 F.3d 527, 537 (6th Cir. 2006); Jackson v. Leighton, 168 F.3d 903, 909 (6th Cir. 1999).

E. Correct Care

Plaintiff sues Correct Care based upon allegations of inadequate medical care at the CJC. The specific claims made in the Complaint are:

> a) the medical staff were unqualified, failed to properly dispense medications, incorrectly evaluated medical issues, and did not give priority to inmates who had life threatening diseases and illnesses;
>
> b) medical orders were often not followed or were altered by staff who worked on different shifts; and
>
> c) he was not properly treated for a sore on his penis, cuts in his mouth, and an infection, he was not fully informed about the results of a chest x-ray, and the medication he was given by the medical staff for H.I.V., Hepatitis-C, and high blood pressure made him violently ill.

10

See Complaint (Docket Entry No. 1), at 5-6.

"Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A claim for deliberate indifference to a prisoner's serious medical needs has both a subjective and an objective component. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). To satisfy the objective component, the plaintiff must allege that he has a sufficiently serious medical need. Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 897 (6th Cir. 2004); Comstock, 273 F.3d at 703. For the subjective component, the plaintiff must demonstrate that the defendant had a sufficiently culpable state of mind, in other words, that the official acted with deliberate indifference to the plaintiff's serious medical need. Farmer, 511 U.S. at 834. This standard is not satisfied by a showing of negligence or medical malpractice on the part of the defendant because the subjective requirement acts "to prevent the constitutionalization of medical malpractice claims." Comstock, 273 F.3d at 703. See also Estelle, 429 U.S. at 105; Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985).

After review of the parties' filings, the Court finds that summary judgment should be granted to Correct Care. As an initial matter, Correct Care cannot be found liable under Section 1983 based solely upon a theory of respondeat superior due to the actions of its employees. See Board of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996). Because Correct Care is not an individual, the Section 1983 claims brought against it must be premised upon a showing of municipal liability under the analysis set out in Monell v. Department of Soc. Servs, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). See Starcher v. Correctional Med. Sys., Inc., 7 Fed.Appx. 459, 2001 WL 345810 (6th Cir. March 26, 2001) (applying policy requirement to private medical care provider in a section 1983 case). In Monell, the United States Supreme Court held that a

municipality can be found liable under Section 1983 only if a policy of the municipality itself causes the constitutional violation at issue. The Supreme Court found that "[i]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694. A plaintiff in such a situation must show that the entity sued was the "moving force" behind the violation of the constitutional rights at issue. City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), abrogated on other grounds, Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting Monell, 436 U.S. at 694), and that the complained-about action "was taken with the requisite degree of culpability and [the plaintiff] must demonstrate a direct casual link between the [defendant's] action and the deprivation of federal rights." Gregory, 220 F.3d at 442 (quoting Board of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 405).

Plaintiff has not satisfied his obligation to show that a policy of Correct Care was the moving force behind the alleged deficiencies in the medical care about which he complains. In the face of the affirmative evidence from Defendant Correct Care, Plaintiff cannot merely rest on allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323-24; Chao v. Hall Holding Co., Inc., 285 F.3d 415, 424 (6th Cir. 2002); Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).[6] Plaintiff's assertions that Correct Care does not adequately train its employees, provides improper supervision, and knowingly permits substandard care to be provided are conjecture and speculation on his part and are unsupported by any actual admissible evidence that has been presented to the Court. Conclusory and speculative allegations do not raise genuine issues of material fact. See Chapman, supra; Smith, supra. Plaintiff must do more than merely point to something Correct Care could have done differently. See City of Canton,

---

[6] Plaintiff's pro se status does not relieve him of satisfying his basic obligations when faced with a dispositive motion. Although courts generally afford pro se litigants some leeway in reviewing their filings, pro se plaintiffs are not automatically entitled to take every case to trial and the lenient treatment generally accorded to pro se litigants has limits. See Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991).

12

489 U.S. at 392; Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994). Any plaintiff pursuing a Monell claim bears a heavy burden to establish liability. See Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005). Plaintiff simply has not come close to satisfying his burden of raising a genuine issue of material fact on this issue.

Furthermore, the bulk of the allegations set out in the Complaint concerning medical care at the CJC are essentially a list of Plaintiffs' observations and complaints about the general provision of medical care at the CJC and are not linked to any specific incident involving Plaintiff's actual medical care. Plaintiff cannot base claims upon events that involve other inmates, and Section 1983 is not a vehicle for him to voice general displeasure or to simply point to things he believes need to be changed at the CJC.

Finally, the facts alleged by Plaintiff simply fail to provide a basis for any reasonable jury to find that he was denied medical treatment in a manner that rises to the level of constitutional magnitude. Other than a complaint about a few weeks of delayed treatment for the sore on his penis, Plaintiff's own allegations show that he was not ignored. He was examined, given medications, provided with a topical creme and antibiotic creme, and given a chest x-ray. See Complaint (Docket Entry No. 1), at 6; Response in Opposition (Docket Entry No. 52), at 9. Plaintiff's claims essentially amount to displeasure with the manner or adequacy of the course of treatment he received at the CJC. He believes that he should have been treated more promptly or been given different treatment. However, when a prisoner has received some medical attention and the dispute is over the adequacy of that care, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law. Hill v Jones, 211 F.3d 1269 (6th Cir.2000); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). See also Dotson v. Phillips, 385 Fed. Appx. 468, 2010 WL 2776875 (6th Cir. July 12, 2010) (deliberate indifference was not shown by evidence of a four day delay between inmate's ankle injury and his examination by the prison physician despite inmate's complaints of extreme pain). Plaintiff's contention that his medications were ineffective is itself not sufficient to support his constitutional claim. See Thomas v. Coble, 55

Fed. Appx. 748, 2003 WL 343240 (6th Cir. Feb. 11, 2003) (summary judgment properly granted to prison physician despite inmate's disagreement with physician over adequacy of pain medication).

Although the care Plaintiff received at the CJC may not have been as prompt, thorough, or far-reaching as he may have received had he not been incarcerated and had he sought treatment on his own from private medical care providers, the Constitution does not guarantee the "optimum or best medical treatment." Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). Further, deliberate indifference is not shown because "alternative procedures might have better addressed [a prisoner's] particular needs." Graham v. County of Washtenaw, 358 F.3d 377, 384 (6th Cir. 2004).

With respect to a claim based on Plaintiff's allegations of delayed treatment, he has not shown that this medical condition, although certainly important to Plaintiff, amounted to an objectively obvious serious medical need. In such a situation, the Sixth Circuit Court of Appeals has held that an inmate who complains that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. See Napier v. Madison Cnty., 238 F.3d 739, 742 (6th Cir. 2001). Plaintiff has failed to place any verifying medical evidence in the record that satisfies this requirement.

F. Unnamed Defendants

The remaining defendants in this action are the unnamed "C.J.C.['s] nurse practitioners" and "C.J.C.['s] Doctor M.D." In their motion to dismiss, these defendants argue that dismissal is appropriate because Plaintiff's attempt to serve them collectively as a group does not constitute service of process upon any individual.

Federal Rule of Civil Procedure 10(a) requires Plaintiff to "name all the parties" in the Complaint. Plaintiff argues that he could not identify these defendants at the time of the filing of the Complaint because medical staff at the CJC do not wear name tags. That provides an excuse for his initial use of pseudonyms instead of the specific names of these defendants. However, he must

14

nonetheless make reasonable attempts to identify the defendants through discovery and must subsequently amend the complaint to reflect the discovered identities and effect service on those named parties within the 120 day period provided by Rule 4(m).  See Petty v. County of Franklin, 478 F.3d 341, 345–46 (6th Cir. 2007).  Plaintiff has not shown that he made any attempt to discover the identities of these defendants.  Accordingly, the unnamed defendants would ordinarily be subject to dismissal without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure.

However, as set out supra at Section III(E), Plaintiff has not set forth facts in this action that support a constitutional claim based on allegations that he was denied adequate medical care.  Accordingly, there is no underlying factual support for a constitutional claim under Section 1983 against any CJC nurse practitioners or medical doctors even if they were specifically identified in an amended complaint and were properly served with process in this action.  Accordingly, the motion to dismiss should be granted with prejudice on this alternative basis.

## RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that the motion to dismiss of Danny Blaylock (Docket Entry No. 23), the motion to dismiss of Daron Hall (Docket Entry No. 25), the motion to dismiss of Correctional Officers Sloan, Howell, Darby, and Dotson (Docket Entry No. 27), the motion to dismiss of the unnamed defendants identified in the complaint as "C.J.C.['s] nurse practitioners" and "C.J.C.['s] Doctor M.D." (Docket Entry No. 34), and the motion for summary judgment of Defendant Correct Care Solutions, LLC (Docket Entry No. 43), all be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made.  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.

See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge